LYDIA A. GLASIER, Respondent, *v.* THE TOWN OF HEBRON, Appellant.

The duty which a municipality owes to the public to see that its streets and highways are maintained in a fairly safe condition, is measured by the circumstances; it requires much greater attention to the condition of a thronged thoroughfare in a populous city than to that of an ordinary highway running through a sparsely settled district, and not along what might be regarded as a dangerous piece of country.

In an action against a town under the act of 1881 (Chap. 700, Laws of 1881), to recover damages for injuries sustained by plaintiff through the alleged negligence of defendant in not properly guarding a public highway, the following facts appeared: The highway was an ordinary country road which ran along a pond for some distance, but was separated therefrom by woods. At one point there was a clearing or break in the woods from the road down to the pond, eight to twelve feet wide. In order to reach the pond from the road with a vehicle at this opening it would be necessary to turn the horse at right angles with the highway. Plaintiff, who was traveling in a cutter on the highway, stopped her horse at the opening to allow an approaching team to pass; her horse was frightened by a barrel which fell therefrom, became unmanageable, and turning at right angles with the road, backed the cutter down to the pond and upset plaintiff in the water. The highway had been in the same condition and plaintiff had been familiar with it for many years. It did not appear that any accident had ever happened previously, caused by the absence of a guard or fence at the opening. *Held*, that plaintiff failed to show negligence on the part of the town or any of its officers, and so a submission of that question to the jury was error.

*Glasier* v. *Town of Hebron* (62 Hun, 137), reversed.

(Argued February 11, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made the fourth Tuesday of November, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*L. H. Northup* for appellant. Neither the highway nor the want of a guard or railing was the proximate cause of the accident to plaintiff. Negligence is not actionable unless it is the proximate cause of the injury. (*Lowery* v. *W. U. T. Co.*, 60 N. Y. 198; *Smith* v. *Kanawha Co.*, 8 Lawyer's An. Rep. 82; *Ins. Co.* v. *Tweed*, 7 Wall. 44; *Fawcett* v. *P. C. & S. L. R. R. Co.*, 24 N. Y. 755; *Taylor* v. *City of Yonkers*, 105 id. 202; *Titus* v. *Northbridge*, 97 Mass. 258; *Fogg* v. *Nahant*, 98 id. 578–580; *Searles* v. *M. R. Co.*, 101 N. Y. 661; *Malone* v. *B. & A. R. R. Co.*, 51 Hun, 532; *Moulton* v. *Sanford*, 51 Me. 127.) All the liability of any town for injuries from any "defective highways" is created by section 1 of chapter 700 of Laws of 1881. (2 R. S. 889, 916.) The court erred in receiving in evidence the photograph showing fence built since the accident. (*F. N. Bank* v. *Vil. of Port Chester*, 96 N. Y. 550; *Corcoran* v. *Vil. of Peekskill*, 108 N. Y. 550; *Stone* v. *Town of Poland*, 58 Hun, 21; *Getty* v. *Town of Hamlin*, 37 N. Y. S. R. 141.) The court erred in receiving in evidence the conversation between the witness Abram Gould, his father and Getty the commissioner. (*Stone* v. *Town of Poland*, 58 Hun, 21.) The court erred in refusing to charge "that the road having been in the same condition for so many years and no accident having happened there before shows that the accident was one of a class so rare, unsuspected and unforeseen that the defendant or its commissioner could not be charged with negligence for failure to guard against it." (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Lafflin* v. *B. & S. W. R. R. Co.*, 106 id. 136; *Loftus* v. *U. F. Co.*, 84 id. 455; *Mars* v. *D. & H. C. Co.*, 54 Hun, 625; *Monongahela* v. *Fischer*, 111

Penn. St. 13.) The court should have granted the motion for the nonsuit. (*Monk* v. *Town of New Utrecht*, 104 N. Y. 552; 44 id. 118; 121 id. 126; 67 id. 563; 38 id. 158; 54 id. 360; 67 id. 593.) The court erred in refusing to charge "that if they find that the boys stopped at a point in the road entirely outside of the path, at a place where it was safe and convenient for the plaintiff to pass, and she saw it, it was her duty to have passed at that place." (*Ryan* v. *M. R. Co.*, 121 N. Y. 126.)

*J. Sanford Potter* for respondent. The photograph and map introduced in evidence were properly admitted. (Abb. Tr. Brief, §§ 265, 266, 617; *People* v. *Buddensieck*, 103 N. Y. 487; *Archer* v. *N. Y., N. H. & H. R. R. Co.*, 106 N. Y. 589; *Stouter* v. *M. R. Co.*, 128 N. Y. 661.) Evidence that the highway commissioner erected a fence or barrier at the spot where the accident occurred a short time afterward would have been competent. (*Stone* v. *Town of Poland*, 58 Hun, 21; *Ivory* v. *Town of Deerpark*, 116 N. Y. 484.) The question of defendant's negligence was properly submitted to the jury. (*Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *Maxim* v. *Town of Champion*, 119 id. 626; *Hyatt* v. *Village of Rondout*, 44 Barb. 386; *Burrill* v. *Uncapher*, 117 Penn. St. 353.) The question of plaintiff's negligence was properly submitted to the jury. (*Sherry* v. *N. Y. C. R. R. Co.*, 104 N. Y. 652–657; *Bly* v. *Village of Whitehall*, 47 Hun, 637; 120 N. Y. 506; *Lent* v. *N. Y. C. & H. R. R. R. Co.*, Id. 467; *MacUngle* v. *Merkhoffer*, 71 Penn. St. 276; *Kennaday* v. *Mayor*, etc., 73 N. Y. 368; *Ring* v. *City of Cohoes*, 77 id. 83; *Ivory* v. *Town of Deerpark*, 116 id. 486.) It was urged upon the trial that the accident was caused by the "blizzard." The extent of this storm and its effects upon the highway, was a matter properly submitted to the jury for its consideration. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Ivory* v. *Town of Deerpark*, 116 id. 476; *Haufe* v. *Felton*, 29 Wis. 296; Pollock on Torts, 378.) For the purpose of charging the town with liability, notice to, and knowledge of, the commissioner of highways is sufficient, and the knowledge of one commissioner must

be imputed to his successor, and the town made chargeable. therewith. (*Goldworth* v. *Linden*, 75 Wis. 24; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476; Laws of 1890, chap. 568, § 16.)

PECKHAM, J. The plaintiff brings this action against the defendant to recover for personal injuries sustained by her by reason of the negligence of the defendant. That negligence consisted, as alleged by the plaintiff, in the failure on the part of the defendant to take proper care in guarding a public highway in the town of Hebron, in consequence of which negligence the road was unsafe and dangerous to travel over. The plaintiff alleged that on the 24th of March, 1888, while she was riding in a cutter drawn by one horse over the highway leading from West Pawlet to Hebron, and known as the West Pawlet highway, and at a place where it was but about 20 feet in width, and ran along the top of a steep embankment made above what was termed Reed's pond, she was, without any fault or negligence on her part, thrown down the steep embankment on the northerly side of the highway and into the pond of cold and freezing water, where she remained some time, and by reason of which she sustained damage in a stated sum.

The alleged negligence was the failure of the defendant to place a guard or rail at that point where the accident occurred, so as to prevent any vehicle from being backed or drawn into the pond at that point.

The defendant denied the allegations of the complaint, and the parties went to trial upon the pleadings at a Circuit Court of Washington county. The uncontradicted evidence showed that the highway in question, at the point where the accident occurred, was over 17 feet in width, and was in good repair and condition, except so far as it was affected by the snow and the drifting thereof, caused by the great storm of March, 1888. At the point where the accident occurred there was a break in the shelter of the woods which skirted the pond for most of the distance along the highway, and that break was for a distance, varying by the evidence between 8 feet as the smallest

and 12 feet as the greatest distance. The highway skirted the southern boundaries of the pond. There were also small bushes between the trees. It appeared quite clearly that in order to get from the road to the water through this clearing or break in the woods, one driving would have to turn his horse at right angles with the road, and either drive his horse or back it down to the pond. There were a few other breaks of the same description, where, as one of the witnesses said, there might be places between the trees of sufficient width to permit a horse and cutter to reach the water from the highway if they went in backwards.

It is plain from the evidence that in no other way than directly at right angles with the road could a horse and cutter be driven into or reach the pond from the highway.

The way the accident in question happened, as related by the plaintiff, was this: She was driving along the highway with a friend in the cutter behind one horse; she had reached this point in the road when she observed a team some little distance in front of her, and thinking that where she was was the best place to pass, she stopped her horse and called out to the persons in charge of the team, who were boys, to come on and she would wait for them. This they did, and when at a point nearly opposite her own horse and cutter a barrel from the boys' sleigh fell to the road just in front of or near to the plaintiff's horse, and frightened him so that he became unmanageable, faced towards the boys' sleigh, turned the cutter so that it was towards the pond, and then backed down the declivity from the highway to the pond, and upset the plaintiff and her companion into the water. They remained there clinging to a stump until they were rescued in an almost unconscious condition, when they were removed to a neighbor's, where they remained a few days, greatly affected by their immersion in the water for so long a time and in such weather.

It appears by witnesses on the part of the plaintiff that they had known that highway from 30 to 50 years, and the plaintiff appears to have been familiar with it for a long number

of years.  Its condition was about the same as it always had been within the recollection of the witnesses, and the trees and bushes along its boundaries where it skirted the pond were all about the same height and nearness to each other as they had been during that whole time.  So far as appears, no accident had ever occurred upon the highway of any nature, caused by the absence of a guard or fence along these breaks in the woods.

This action is brought under chapter 700 of the Laws of 1881, which changes the law in regard to the liability of the towns of this state, and provides for their liability by reason of defective highways or bridges in cases in which commissioners of highways had theretofore been liable.  Whatever may be the proper construction of this statute we do not think that a case has been made out here within any meaning of that act.  We think no negligence has been shown either on the part of the town or any of its officers, including the commissioners of highways, at the time of the happening of the accident, or preceding it.  We do not think that it was a fair question to be submitted to a jury as to the alleged negligence of the defendant.  While it is said that a municipal corporation owes a duty of active vigilance to see that its streets and highways are maintained in a fairly safe condition ; yet such expression, " active vigilance," is a relative term.  What would be more than active vigilance under some circumstances, would be less than that amount under others.  A thronged thoroughfare in a populous city would require much more attention in regard to its condition as to safety on the part of the officers of the corporation, than would any ordinary highway running through a sparsely settled district of a town, and not along what might be regarded as a dangerous piece of country.  In this case we see an ordinary country road, which has been known for fifty years nearly, during which time, so far as it appears, no accident of the kind has ever occurred, and where the break in the woods skirting the boundary between the pond and the highway was of such a short distance that in order to reach the pond it was necessary to turn

one's horse at right angles with the road and drive him or back him down to the water.   To leave such a short distance, from eight to twelve feet, unguarded, we think was not suffi-cient evidence of negligence upon which to submit the case to a jury.   Ordinarily careful men, we think, would be excused if they neglected to see the necessity of placing a guard along those breaks to prevent possible access to the pond.   The dis-tance was so short that if in driving along the highway even on the darkest night the horse should lose his way and step off towards the pond, he would enter the woods before he could reach it, and it would only be by turning at right angles directly that the pond could be reached at all, and then only through a very narrow opening.   It was not an accident of a character which was likely to happen, and there was no negligence in failing to guard against a very unlikely possibility.

We think this case comes within the principle decided in *Hubbell* v. *City of Yonkers* (104 N. Y. 434).

For the reasons above given, we think the plaintiff should have been nonsuited, and the judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, J., not voting.

Judgment reversed.