FAVRO v. TROY & W. T. BRIDGE CO.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

BRIDGES—USE OF TRAPDOOR—NEGLIGENCE.

In an action for personal injuries, it appeared that plaintiff, while crossing a bridge, was injured by the raising of a trapdoor from below by an employé of defendant; that the door was outside the regular way for foot passengers; that the bridge had been used for 10 years, during which time millions of foot passengers had passed over it; and that an accident had never before happened from the use of the door. *Held*, that defendant was not chargeable with negligence in permitting an employé to lift the door without having ascertained whether a person was on it, or about to come on it.

Appeal from circuit court, Albany county.

Action by Elizabeth T. Favro against the Troy & West Troy Bridge Company for personal injuries. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and HERRICK, PUTNAM, and MERWIN, JJ.

G. Robertson, Jr. (Matthew Hale and Albert C. Tennant, of counsel), for appellant.

John H. Gleason, for respondent.

HERRICK, J. This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff, and against the defendant, for the sum of $7,000, and from an order denying a motion for a new trial, made upon the minutes of the court. It appears that the defendant owns and operates a bridge crossing the Hudson river, from West Troy, in the county of Albany, to East Troy, in the county of Rensselaer. On the outer side of the bridge there is a walk intended for foot passengers, 5 feet 7 inches in width; then a girder 2 feet 3 inches wide, which is part of the structure and support of the bridge; then the roadway proper, 23 feet in width, and comprising—First, next to the girder, a space 3 feet 9 inches between the girder and the railroad tracks; second, two lines of railroad tracks with a space between them; third, upon the other side, a space 3 feet 9 inches between the nearest railroad track and the girder on that side; fourth, a girder of the same width as upon the other side; and, fifth, an outer walk of the same width as that on the other side. Near the center of the bridge there is a draw of from 250 feet to 300 feet in length. About the center of the draw there is a trapdoor upon the roadway between the girder and the north railroad track, 2 feet 6 inches in length along the girder; and extending out from the girder towards the railroad track, 2 feet 6 inches, there is a ring attached to the northwest corner of the trapdoor next to the girder, with a chain attached to the ring passing over a pulley then dropped through a hole in the bridge next to the side of the girder, so that a person underneath the door, desiring to raise it, can do so by pulling this chain. The hinges of this trapdoor are on the east side thereof; the ring and chain are at the west;

so that, when the door is raised, it rises from the west, and describes an arc towards the easterly side. It was constructed to allow the employés of the bridge to go down below, to oil the machinery of the draw, and for other necessary purposes. It had to be located in that part of the bridge, and appears to have been constructed and operated in the same manner as is common upon bridges of that character. It appears from the evidence that the trapdoor was properly constructed, and was in a safe and proper condition. The foot path or way, it appears, was composed of boards laid lengthwise of the bridge, with interstices between them.

The plaintiff is a resident of West Troy. On April 24, 1893, she went over to Troy, wheeling a baby in a baby carriage; and, upon her return from Troy to West Troy, she did not take the sidewalk or path for foot passengers, but that portion of the way on the north side of the bridge between the girder and the railroad track, as hereinbefore described. She says that her reason for doing so was that the interstices between the boards of the foot way were so wide in places that the wheels of the carriage were liable to get between the boards, and, in addition, that she had been previously informed by an employé of the defendant that it was safe to take the way between the girder and the railroad tracks. She was entirely familiar with the bridge, had passed over it repeatedly, and claims that she did not notice the trapdoor at the time of the accident. The baby carriage had just passed over the door, and she had stepped upon it, when an employé of the defendant, who had gone below, desiring to come up, pulled upon the chain, and raised the trapdoor, by means of which the plaintiff was thrown down upon the bridge, and received the injuries complained of in this action. It appeared in evidence that, during 10 years before the happening of the accident, more than 7,500,000 foot passengers, averaging 2,100 daily, had crossed the bridge, and that no accident had occurred. It also appeared that women were accustomed to cross with baby carriages, many of them taking the same route as taken by the plaintiff in this action.

A motion was made at the close of the plaintiff's evidence, and again at the close of all the evidence in the case, for a nonsuit, upon the ground, among others, that there was no negligence shown upon the part of the defendant; that the trapdoor in use was the ordinary and customary kind used upon bridges of this kind; that there is no evidence that it was improperly constructed or improperly used, and that the bridge had been used for over 20 years; that millions of people had crossed it; that, up to the time of this accident, no accident had occurred; and that no injury had ever been received in consequence of the trapdoor; and that the defendant had no reason to apprehend that any injury was likely to result therefrom to any passenger. The motions were denied, and the court, in charging, said:

"The only possible question with respect to the defendant's negligence is just this, viz.: Ought they to have permitted their servants to lift the trapdoor without in some way ascertaining whether a person was upon it, or about to come upon it?"

It seems to me that this case is within the principle laid down in Dougan v. Transportation Co., 56 N. Y. 1; Crocheron v. Ferry Co., Id. 656; Loftus v. Ferry Co., 84 N. Y. 455; Burke v. Witherbee, 98 N. Y. 562; Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858; Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599; Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401.

It is claimed upon the part of the respondent that the defendant should be held to the same liability as are common carriers of passengers. Assuming that to be the correct rule, still it seems to me that the evidence in this case fails to establish actionable negligence upon the part of the defendant. "A carrier of passengers is not bound to foresee and provide against casualties never before known, and not reasonably to be expected. * * * Hence his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it." Cleveland v. Steamboat Co., 68 N. Y. 306.

In Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858, the plaintiff had, with his horse and carriage, gone over an embankment at the side of a street; and the plaintiff's contention was that the defendant was negligent in not having sufficiently guarded it, to prevent horses going over; and the court said:

"The very fact that for ten years or more this embankment had been in the same condition, and that, so far as appears, no similar accident had occurred, is most cogent evidence of the lack of any negligence on the part of the city in failing to guard this spot."

In the case at bar it appears that no accident had ever occurred from the use of this trapdoor before; that, during the preceding 10 years, millions of foot passengers had gone back and forth over the bridge; that it was a common occurrence for women with baby carriages to pass and repass over the very portion of the bridge where this accident happened. Experience had not shown that any danger was to be apprehended from this trapdoor that it was necessary to guard against. Cleveland v. Steamboat Co., supra. The fact that an accident has happened which might possibly have been prevented does not necessarily indicate negligence upon the part of the defendant. "That which never happened before, and which in its character is such as not to naturally occur to a prudent man, to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." Hubbell v. City of Yonkers, 104 N. Y. 434–439, 10 N. E. 858. Of course, it was apparent that a person might step on the trapdoor as it was being raised, or might be upon it when it was raised; "but that this was likely to occur is negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty." Loftus v. Ferry Co., 84 N. Y. 455–460. While it was apparent, as I have stated, that it might happen that a person should step on the trapdoor while it was being raised, yet the possibility that that should happen in this portion of the bridge, which was aside from the regular pathway, and separate from it by a raised girder, over 2 feet in width,—that a person

traversing the bridge should step upon this trapdoor just at the time it was being raised,—was so remote a possibility, as was demonstrated by the use of the bridge for so many years, during which millions of people passed over it, without its occurrence, rendered the accident one of so unlikely a character that the defendant cannot be charged with negligence in not having anticipated its happening, and guarded against it. "It was not an accident of a character which was likely to happen, and there was no negligence in failing to guard against a very unlikely possibility." Glasier v. Town of Hebron, 131 N. Y. 447–453, 30 N. E. 239.

The order and judgment should be reversed, and a new trial granted; costs to abide the event. All concur.