### BUCKLEY v. WESTCHESTER LIGHTING CO.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. TRIAL—INSTRUCTIONS.

Where plaintiff, at the close of the main charge, requested an instruction, and the court replied: "Yes. I will not touch that any more than I have"—the language of the court should be construed as in effect giving the instruction, and not as a refusal so to do.

2. SAME—INSTRUCTIONS—REITERATION OF PROPOSITIONS.

Where the trial court has fully charged the law on one aspect of the case, it is not bound to reiterate it in another form.

3. SAME—NEGLIGENCE—DEATH—LIVE ELECTRIC WIRE—INSTRUCTIONS.

In an action for the death of plaintiff's intestate by coming in contact with a live electric wire, which was being repaired just outside the boiler house in which the intestate was employed, plaintiff requested the court to charge that the intestate was not obliged to apprehend danger from a live wire on the ground at the entrance of the boiler house, if it was not there when he entered the house. *Held*, that it was not error to refuse the instruction, since a witness had testified that intestate knew the wire was being repaired just outside the boiler house, and that he had been warned that it was alive, and whether the intestate was obliged to apprehend danger depended on the facts and circumstances.

4. SAME—INSTRUCTIONS.

An instruction that, whatever was the cause of the breaking of the wire and whosesoever fault it may have been, deceased was required to exercise the care of a reasonably prudent man, and if he knew of its location, or ought to have known, and neglected to keep a safe distance from the wire. there could be no recovery, was not objectionable on the ground that the court did not charge that deceased's negligence must have been such as contributed to the accident.

5. SAME—INSTRUCTIONS. ·

An instruction that if deceased, knowing the proximity of the wire and the danger thereof, became preoccupied in any way and forgot about the danger, and his doing so was a failure to remain as alert and watchful as a reasonably careful man should have been, there could be no recovery, was not erroneous.

6. TRIAL—OBJECTION TO EVIDENCE—AVAILABILITY OF OBJECTION.

An objection to testimony, made subsequent to the giving of the same, is of no avail; the proper remedy being a motion to strike.

7. SAME—APPEAL—HARMLESS ERROR. ·

The erroneous admission of evidence is no ground for reversal, where the only point on which it bears is abundantly proven by competent evidence.

Hooker, J., dissenting.

Appeal from Special Term, Westchester County.

Action by James Buckley, as administrator, against the Westchester Lighting Company. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Jacob Marks, for appellant.

Frank Verner Johnson (E. Clyde Sherwood, on the brief), for respondent.

JENKS, J. The plaintiff charges an electric lighting company with negligence, in that it permitted its wire to be and to remain out of repair and broken, and yet alive, whereby plaintiff's intestate, then upon a public street, came into contact with the wire and was killed. The jury found that "both parties were negligent, and for the defendant."

The intestate was an engineer of a boiler in a building on North street, New Rochelle. In the daytime Mr. Stroebel, a lineman of the New York Telephone Company, saw the wire lying on the ground and spluttering fire. It was then quite close to the boiler house. Mr. Stroebel lifted the wire by tape insulation, and placed it close to a pole, and in the rear of the boiler house, some distance away from its only entrance. Then the intestate placed boards on and around it, so as to fence it in. The defendant had been notified of the break, and sent in haste two linemen to repair the wire. Upon their arrival, one of them, Mr. Pfeiffer, took the wire back to the sidewalk, and they there began the work of repair, which was a process of splicing. The wires being repaired were then in the vicinity of the door of the boiler house. The intestate, during this work of repair, stepped out of the boiler house, and fell dead. In all probability he came into contact with a live wire. No other cause of his death is suggested, and the attendant circumstances point to death from an electric shock from the wire or wires, which were then charged with lethal current.

There was dispute whether the intestate went into the boiler house before repairs were begun. Mr. Stroebel, for the plaintiff, testifies that the intestate did enter it before that time, and remained there until he stepped out to his death. But the two linemen testify, for the defendant, that the intestate was present when they began their

work (and one also says when they laid it out), and that Mr. Pfeiffer then told him that there was enough current in the wire to kill six men. But, so far as this bears upon the dangerous character of the wire, even Mr. Stroebel testifies that Mr. Pfeiffer warned the intestate of its deadly character, but that the intestate was in the boiler house at that time. In any event, the evidence that the intestate knew of the dangerous character of the wire before the arrival of the repairers is overwhelming. The plaintiff's witness, Mr. Stroebel, testifies that the intestate came out of the boiler house backwards. The witnesses vary from 5 to 20 minutes in estimating the time during which the intestate was in the boiler house. I think that the case was properly for the jury, and that no reason appears from the facts for disturbing its verdict.

The learned counsel for the appellant insists that the learned court erred in several rulings which are fatal to the judgment. At the close of the main charge, the court was asked by the plaintiff to charge:

"That Golden had the right to assume that while he was inside the boiler house, engaged in the performance of his duties, the defendant's employés would not place a live wire near the entrance of that house, where it would become dangerous to him."

The court replied:

"Yes. I will not touch that any more than I have."

The appellant says that the court refused to charge the request. I think otherwise. It answered "Yes," thereby in effect so charging the jury. I cannot construe the entire response of the court: "Yes. I will not touch that any more than I have"—save as a statement by the court that it would charge, and that it did charge, the request, but that it would decline to charge further than it had charged, in the main body of the charge and in that request. If the exception be to the refusal to charge this request, it is not good, because there was no refusal. If the exception be to the declination to charge any further, then, of course, it is not well taken; for the learned counsel should have made further specific requests. The criticism that the answer: "Yes. I will not touch that any more than I have"—is a refusal, ignores "Yes," and the period after it, or assumes that a refusal to go further negatives or retracts the "Yes." The learned court (Keogh, J.) had instructed the jury in the main charge:

"The plaintiff also insists that he has proven that ordinary care on the part of the men who did this work would have been to have gone back 200 feet to the electric pole, and there turned off the current altogether, and that, as he was mending and dealing with a thing the deadliness of which is admitted by everybody, ordinary care should have compelled him to have gone back, climbed up this pole and turned off the current. * * * You are confined in this case to deciding whether the defendant's servants were guilty of negligence after they discovered the broken wire and while they were mending it; and you know, as well as I, that, when I speak of care, it means such care as a man of ordinary prudence and ordinary wit would apply to the work he was doing. * * * You must adapt your care to the work you are doing. So, in deciding whether these people acted sensibly and prudently and with ordinary care, you must remember what they were doing. * * * I referred to the conditions before the wire broke, to show you that he knew the danger of the wire, what it was, and that he picked it up with dry wood and put it over the fence. Did he, in backing out, or walking out, of this boiler house

in the way you find he did, use the care and that watchfulness that a man should do, stepping near a deadly thing? * * * Now, suppose you find that the company's servants were negligent men, and that Golden was not negligent; then you come to the question of how much you should pay him."

The plaintiff's counsel also asked the court to charge:

"If the defendant's employés, in repairing the broken wire while the deceased was inside the boiler house, carelessly allowed a portion of the live wire to reach the ground near the doorway of the boiler house, and the deceased, without knowing the live wire was near the doorway, and while exercising care, came out of the doorway, and came in contact with the live wire near the door, while stepping out of the door, and received a shock which caused his death, the defendant is responsible."

The Court: "I will leave that to the jury. That is a second summing up. (Exception.)"

The court theretofore had fully and sufficiently charged the law, and it was not bound to reiterate it in the proposition presented, or in the form of that proposition. Rexter v. Starin, 73 N. Y. 601.

The court was also requested by the plaintiff's counsel to charge that:

"The intestate was lawfully in the boiler house, and was not obliged to apprehend danger from a live wire on the ground immediately at the entrance of the boiler house, if it was not there when he entered the house."

The Court: "I will leave all these questions to the jury. It is a question of fact."

Exception was then taken. Whether the intestate was "obliged" to apprehend danger manifestly depended upon the surrounding facts and circumstances. Assume that the jury found that the intestate was fully apprised of the thrice deadly character of the wire, and that it credited the testimony of Mr. Wallace, one of the repairers, that while they were laying out their work the intestate was "around there," that he "stood for quite a while in full view of us doing the work," and that he remained in the boiler house only five minutes, or even that while he was in the boiler house, as testified to by plaintiff's witness Stroebel, the linemen then warned him that the wire was alive; can it be said as matter of law that he was not under a legal obligation (i. e., in the exercise of due care, bound) to apprehend danger, even if the wire was not immediately at the entrance when he entered the house? The request is, not that he was not to apprehend that a live wire would be near the entrance to the house, but that he was not to apprehend danger from a live wire near the house, if the wire were not near the house when he entered it.

The court, under exception, charged:

"Whatever was the cause of the breaking of the defendant's wire, and whosesoever fault it may have been, the deceased was required to exercise the care of a reasonably prudent man to avoid contact with the wire, and if he knew its location, or if he ought to have known it, and neglected to keep a reasonably safe distance from the wire, and therefore came in contact with it by accidentally stepping upon it, there can be no recovery in this action."

This is objected to, in that the court did not charge the jury that the plaintiff's negligence must be such as contributed to the accident. I think this is hypercriticism. The theory of the plaintiff was that death was caused by electrocution. The negligence referred to is that

of coming in contact with the living wire, which was, of course, a contributing cause.

The court also charged, under the plaintiff's exception:

"If the deceased, knowing the proximity of this wire and the danger thereof, became preoccupied in any way and forgot about the danger, and his so doing was a failure to remain as alert·and watchful as a reasonably careful man should under the circumstances, then there can be no recovery in this action."

The learned counsel for the appellant argues at great length and with much earnestness that the exception is well taken. He places this charge side by side with that made in Lewis v. Long Island Railroad Co., 162 N. Y. 60, 61, 56 N. E. 548, and then says that we have "almost" the charge condemned in that case. The charge in the Lewis Case was as follows:

"If you find that the engineer of the defendant's train, after seeing the horses attached to the tally-ho in which plaintiff was seated, omitted to do any act which might have prevented the collision, or might have lessened the danger to plaintiff, defendant was guilty of negligence."

The essential and the saving difference for the case at bar is in these words of the learned trial justice:

"And his so doing was a failure to remain as alert and watchful as a reasonably careful man should under the circumstances."

Examination of the opinion in Lewis' Case will show that the gist of the criticism is that the jury might have understood that negligence of the defendant might be based upon the omission of the engineer to do any act which the jury at the time of trial might have believed would have prevented the collision. The charge in the case at bar is not that mere preoccupation and forgetfulness of the intestate defeated recovery, but a preoccupation and forgetfulness that was inconsistent with the conduct of a reasonably careful man under the circumstances. Under this charge, the jury were free to find a verdict for the plaintiff, even though he were preoccupied and forgetful, provided he was, notwithstanding such lapse, in the exercise of due care.

The exception to the testimony that the dangerous character of the wire had been theretofore called to the attention of the intestate is not well taken. The objection was taken subsequent to the testimony, and the remedy of the plaintiff was a motion to strike it out. Link v. Sheldon, 136 N. Y. 1, 9, 32 N. E. 696. Even if erroneously admitted, it bore solely upon the question of notice, which, beyond dispute, was fully proven by competent evidence. In no event, therefore, could it justify the disturbance of the verdict.

The judgment and order should be affirmed, with costs. All concur, except HOOKER, J., who dissents.