·(63 Misc. Rep. 592.)

## HYNES v. STATE.

### (Court of Claims of New York. June, 1909.)

**1. BRIDGES (§ 41*)—INJURY BY DEFECTS.**

An elevation of the plank of a bridge three inches higher than the surface of the street was not such a defect that common experience would suggest that injury would likely be caused thereby.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 86, 87; Dec. Dig. § 41.*]

**·2. BRIDGES (§ 44*)—DEFECTS—CONTRIBUTORY NEGLIGENCE.**

Where the plank in a bridge was elevated three inches higher than the surface of a street, and there was an electric light in the street, and claimant, who, had crossed the bridge before, stumbled over the plank, he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 91–94; Dec. Dig. § 44.*]

**:3. DAMAGES (§ 185*)—PERSONAL INJURIES—EVIDENCE.** ·

In a claim against the state for personal injuries, claimant *held* not to have shown by a fair preponderance of evidence that the present condition of his knee, injured by a fall, was due exclusively to the fall.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 185.*]

Claim by John P. Hynes against the State of New York for dam-·ages for personal injuries. Dismissed, and judgment for State.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Pierson & Robinson, for claimant.

Edward R. O'Malley, Atty. Gen., and Daniel E. Brong, Deputy Atty. Gen., for the State.

MURRAY, J.  This is a claim to recover upwards of $25,000 damages for personal injuries caused by the alleged negligence of the state. About 7:45 in the evening of March 21, 1907, the claimant was walking arm in arm with a female companion down North Salina street. He was going to the south, towards the Salina Street Bridge in the city of Syracuse.  The planking or floor of the bridge was about 3 inches above the surface of the contiguous sidewalk.  When the claimant and his companion approached the bridge, she was on the outside and he on the inside of the walk.  She stepped into a slight depression in the sidewalk and threw the claimant ahead.  He caught the heel of his left foot on the raised plank and was thrown on his hand and knees. His left knee was injured.  After he fell he got up and walked to the Bastile Opera House on Genesee street.  There were no lights on the bridge; but there was an electric light in the center of the street, 50 or 60 feet distant.  It was light enough for him to see what he stumbled on, and after he fell he got up and looked at the place.  He saw the plank was raised about 3 inches higher than the sidewalk.  Salina Street Bridge is one of the most frequented thoroughfares in the city of Syracuse, and the side of the bridge on which the claimant fell was more used than the other side.

The above is an epitomized statement of the claimant's account of how he was injured, with a brief description of the situation on the evening of March 21, 1907, from which it will have to be determined whether the claimant is entitled to recover or not.  During the month of March there was no canal navigation.  So far as the state was concerned, the bridge was out of commission from the discontinuance of navigation in the fall until the opening of the canal in the spring.  The bridge was then not being used by the state, and during this period the state practically relinquished control of it.  It kept no flagman, tenders, or employés upon it, and the use and care of the bridge were assumed by others.  It was kept lowered for the accommodation of a surface railroad company and the convenience of the citizens of Syracuse. Whether it was the duty of the state to keep the bridge even with the sidewalk where it touched the street, or the obligation rested on the city to maintain the sidewalk level with the bridge where the street came in juxtaposition with the bridge, are questions which will be passed without decision; and we will proceed to a consideration of the claimant's proposition that it was negligence on the part of the state to permit the plank on the bridge to be raised 3 inches higher than the surface of the street.

The Salina Street Bridge is one of the most frequented thoroughfares in the city of Syracuse.  Thousands of its population have crossed and recrossed the bridge where this plank or elevation was without misfortune.  See Favro v. Troy Bridge, 4 App. Div. 241, 38 N. Y. Supp. 433.  It cannot, therefore, be claimed that this elevation was so inherently dangerous that one would reasonably anticipate accidents

therefrom. The plank was not such a defect that common experience would naturally suggest that injury was likely to be caused by it. If it was a defect, it was a trivial one. The courts have held that municipal corporations are not chargeable with negligence, where an accident, which according to common experience was not likely to happen, happens to a traveler by reason of some slight defect in a street from which danger was not reasonably to be expected. Beltz v. Yonkers, 148 N. Y. 67, 42 N. E. 401; Hamilton v. Buffalo, 173 N. Y. 72, 65 N. E. 944; Hubbell v. Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Strutt v. Brooklyn R. Co., 18 App. Div. 134, 45 N. Y. Supp. 728; O'Dwyer v. O'Brien, 13 App. Div. 570, 43 N. Y. Supp. 815; Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483. In Hamilton v. Buffalo, supra, the defect was a V-shaped hole in a crosswalk, 34 inches long, 12 inches wide, and 4 inches deep; in Beltz v. Yonkers, supra, a depression in the middle of a flagged sidewalk the depth of the thickness of the surrounding flagging, caused by the removal of a small broken piece of stone; in Strutt v. Brooklyn R. Co., supra, a hose, 3 or 4 inches in diameter, stretched across a wharf.

The claimant had crossed the bridge before. He knew the condition and the elevation of the plank. There was an electric light in the street. It was light enough for him to see the place where he stumbled, and to examine it after he fell. Yet he thoughtlessly walked on, presumably preoccupied, without prudence, or care, or watchfulness against peril. Buckley v. Westchester Lighting Co., 93 App. Div. 436, 87 N. Y. Supp. 763; O'Dwyer v. O'Brien, 13 App. Div. 570, 43 N. Y. Supp. 815; Splittorf v. State, 108 N. Y. 205, 15 N. E. 322; Coleman v. Cent. R. Co., 98 App. Div. 349, 90 N. Y. Supp. 264; Larsen v. U. S. Mtg. Co., 104 App. Div. 76, 93 N. Y. Supp. 610; Williams v. Port Leyden, 62 App. Div. 490, 70 N. Y. Supp. 1100.

A serious impediment to any recovery by the claimant is the doubt whether the present condition of his knee is due (1) entirely to his fall on March 21st; or (2) to lack of subsequent proper medical treatment, which aggravated the injury and caused the present condition of the knee; or (3) to natural disease.

The claimant testified that after he fell he walked to the Bastile Opera House in Genesee street and sat there during part of the performance. When he left the theater he walked to a car, and on leaving the car walked to his home. The accident happened on Thursday. On the Saturday following he walked four blocks to his store, worked in and about the store, and walked with a cane four blocks home at night. If there was, at this time, a dislocation of his knee, or a ruptured ligament, as is suggested, it would have been almost impossible for him to have done this.

He fell on March 21, 1907; and from that time until December of the same year he called in no surgeon to examine his knee and received no proper medical treatment for his alleged injury. He applied ointments and liniments and such other remedies as were suggested to him. In December, 1907, Dr. Saxer examined the knee. A period, therefore, of more than eight months had elapsed since he was hurt

before Dr. Saxer examined the injury. Dr. Saxer described the condition of the knee as he found it in December, 1907. But the doctor also testified that he did not believe a proper diagnosis was made in the case; that, if the claimant had been put to bed after the injury with a plaster of paris cast, his condition possibly might have been corrected; and that the continued use of the knee aggravated the injury. Dr. Vander Veer examined the claimant March 24, 1909, and found him suffering from tuberculosis of the knee in the quiescent stage, and expressed the opinion "that this condition of tuberculosis of the knee was caused by the accident." He further testified he did not think the claimant's injury had been properly treated, and he believed, if it had been properly treated, "he would have had a much better knee than he has at the present time," and that the use of the knee for these eight months aggravated the injury. Dr. McLennon was called as a witness on behalf of the state, and after an examination of the claimant testified he "believed the claimant's condition was due to tuberculosis of the knee."

It was incumbent on the claimant to prove his condition was the result of the alleged injury which he received when he fell at the bridge. If the present condition of the knee was caused by want of a proper diagnosis, or from improper medical treatment, which has aggravated the injury, or caused the development of natural disease, it would be difficult to apportion these speculative causes; and it is just as probable that his condition is the result of one cause as the other. Nelson v. N. Y. City, 101 App. Div. 18, 91 N. Y. Supp. 763. I am of opinion that the state has not been shown negligent, that the claimant was guilty of contributory negligence, and that the claimant has not preponderately proven the condition of his knee was the exclusive sequence of his fall at the bridge.

I am further of the opinion that the claim should be dismissed, and judgment given for the state.