FRANK BEST, as Administrator of WILLIAM BEST, Claimant, v. STATE OF NEW YORK.

### Claim No. 16537.

(State of New York, Court of Claims, January, 1921.)

Highways — immunity of state — when state not negligent in care of highways — claims — Highway Law, § 176.

> The state is always immune from actions or liability unless it expressly waives such immunity and assumes liability. (P. 278.)
> By section 176 of the Highway Law (Laws of 1909, chap. 30, as amended) the state assumes liability for defects in its highways where the state highway is under the patrol system. (Id.)
> It is not negligence on the part of the state to place gravel upon the dirt part of a state highway, worn away from time to time, and bring it up to the level of the macadam surface part of the road. (P. 279.)
> While claimant's intestate, a boy about seven years of age, was riding as a passenger on an auto bus which was being driven

along a state highway operated under the patrol system, the steering gear of the bus broke and the driver could neither guide nor control it. He applied both the front and emergency brakes but the momentum carried the bus along for some distance, and while so moving the left front wheel ran on the hard surface of the macadam road and the right wheel ran on the loose gravel part of the road, thus deflecting the course of the bus toward the north edge of the road. When the bus got to the edge of the road it had almost stopped, but still had momentum sufficient to bring the right front wheel over the edge of the road when the bus overturned, dropped to the bottom of the embankment in the field adjoining and in going down it struck the top of the retaining wall and tore some of it out. Claimant's intestate was caught between the top of the seat in the bus and the bottom of the embankment and was so injured that within a short time he died. Just before the accident the state had placed on each side of the macadam part of the road at the place of the accident several inches in thickness of loose gravel and had brought the sides up to a level with the macadam part of the road and left the dirt and gravel to become hard and packed by the use of the public, but at the time of the accident the gravel had not become hard or packed. *Held,* that the conditions as they existed at the time of the accident were not " defects " within the meaning of section 176 of the Highway Law and the claim herein will be dismissed on the ground that the state was not negligent in failing to anticipate the emergency that occurred at the time of the accident.

CLAIM for personal injuries.

Daniel V. McNamee and R. M. Herzberg, for claimant.

Edward M. Brown, deputy attorney-general, for State of New York.

MORSCHAUSER, J. The claimant presents a claim against the state alleging that his intestate was injured on June 15, 1919, through the negligence of the state, from which injuries the intestate died, and which negligence the claimant asserts was caused by certain defects in a state highway while under the patrol

Court of Claims, January, 1921. [Vol. 114.

system and which defect was the cause of the claimant's intestate being injured.

On the trial both claimant and the state consented that the court view the location where the accident occurred, and further consented that such view should be had in the presence of the attorneys for the claimant and in the presence of the engineers of the state. Pursuant to such consent and under the provisions of section 268 of the Code of Civil Procedure the court viewed the highway and the land surrounding and the conditions existing at the place of the accident.

The intestate was a boy of about seven years of age living with his parents at Philmont, N. Y. On the day in question he was a passenger on an auto bus which carried passengers between Hudson and Philmont, Columbia county, N. Y. At that time the bus was traveling from Hudson to Philmont going in a westerly direction, and while approaching Mellenville, and a few feet east of the place of the accident the steering gear of the bus broke and the driver of the bus could not guide or control it.

At this point the highway was eighteen feet in width, substantially straight and level, running east and west. Further west from the place of the accident there was a slight curve towards the north, the beginning of which was over one hundred feet westerly from the place where the accident occurred. At the beginning of this curve the land adjoining on each side of the road was substantially level with the road, and up to that point the road was straight and level. The highway had fourteen feet of macadam surface, and on each side of this macadam surface there was four feet of dirt surface. The dirt part of the road wore away from use, and to prevent an abrupt shoulder and to make it safe for travel the state from time to time placed gravel on the dirt road to bring the surface of

the dirt part of the road level with the macadam part. Just before the accident the state placed on each side of the macadam part of the road at the place of the accident several inches in thickness of loose gravel and brought it up to a level with the macadam part of the road and left the dirt and gravel to become hard and packed by the use of the public. At the time of the accident the gravel had not become hard or packed at this place. For several hundred feet the surface of the land on the south was about level with the highway, but on the north for the same distance there was an abrupt fall or decline of about twelve feet from the edge and top of the dirt roadway to the bottom of the embankment. There was at the time no guard rail or other barrier placed at the edge of the highway on the north where the embankment existed. From the place of the accident along the bottom of the embankment and running parallel with the road the land sloped upward for about one hundred feet in each direction until it reached the level surface of the land adjoining the highway both east and west of the place where the accident occurred. Before any road was built at this point there was a large basin, and originally a country road was built across the north end of this basin about four feet below the surface of the present state road. From the east and west sides of the edge of the basin as the road was orginally built there was a descent each way toward the place of the accident so that the surface of the old road on its north side was about three feet below the level, and on the south side about nine feet above the level, of the surface of the land adjoining the roadway. When the old road was built it was done by filling up the hollow between the east and west edges of this basin, and on the north side of this fill was placed a retaining wall made of field stone, dry laid, running parallel with the

road for about 100 feet, commencing about thirty feet east and continuing to about seventy feet west of the place where the accident occurred. When the state road was constructed the north line or edge of the state road was placed about three feet southerly from the north edge of the old road, and three feet from the edge of this stone wall, and another fill was made raising the road about four feet so as to make the state road substantially straight and level at this point.

When the steering gear of the bus broke the driver of the bus lost control of it so that it could not be guided. He applied both his foot and emergency brakes, but the momentum carried the bus along for some distance, and while so moving his left front wheel ran on the hard surface of the macadam road and the right wheel ran on the loose gravel part of the road, and this deflected the course of the bus toward the north edge of the road. It continued its course very slowly, and when it got to the edge of the road had almost stopped, but still had momentum sufficient to bring the right front wheel over the edge of the road, and at that moment the bus overturned and dropped to the bottom of the embankment in the field adjoining. In going down it struck the top of the retaining wall and tore some of it out. The intestate was caught between the top of the seat in the bus and the bottom of the embankment, and was so injured that within a short time after the injury the child died from the effects thereof. The claimant asserts that the state road at the point of the accident was defective because the state had placed loose gravel on the side of the road and failed to erect a guard or barrier along the north side or edge thereof; and that by reason of these defects the accident occurred from which the deceased received his injuries which caused his death.

The state asserts that the deceased was guilty of

contributory negligence and that it was not negligent in putting loose gravel on the road and not negligent in failing to place a guard or barrier at this point, and that a guard is only placed along embankments and dangerous places to warn persons traveling on the highway of such danger, and not placed there to protect the travel from going over such bank by building it strong enough to prevent vehicles from breaking through the barrier and going over such embankment.

It was not negligence for the state to place loose gravel on the surface of the dirt road for the purpose of bringing it up to the level of the macadam. It could not permit the dirt roadway adjoining the macadam road to wear down so as to make an abrupt shoulder as this would make it dangerous for ordinary travel and we do not think it was negligence for the state to fail to roll or pack this gravel down as no amount of packing or rolling would prevent a heavy vehicle from cutting into it.

Originally there was no liability on the part of the town for any defects in its highways and under the common law the commissioner of highways or officers exercising similar function were held liable for damages if they failed in their duty in keeping highways reasonably safe for public travel when they had sufficient funds to repair such highways.

The legislature by section 74, chapter 30 of the Laws of 1909 made towns liable for damages sustained by reason of *defects* in highways sustained by persons traveling over such highways and which statute creating such liability reads as follows: '' Every town shall be liable for all damages to persons or property sustained by reason of any *defect* in its highways or bridges, existing because of the neglect of any town superintendent of such town.''

Primarily the state is not liable for negligence and

cannot be sued in its courts nor made liable for damages. This is in consequence of its sovereignty and the state is always immune from actions or liability unless it expressly waives such immunity and assumes liability. *Smith* v. *State of New York,* 227 N. Y. 405; *Lewis* v. *State of New York,* 96 id. 71; *Rexford* v. *State of New York,* 105 id. 229.

By section 176 of the Highway Law, being chapter 30 of the Laws of 1909, and amendments thereto, the state assumed liability for *defects* in its highways where the state highway was under the patrol system and the statute assuming such liability reads as follows: " The state shall not be liable for damages suffered by any person from *defects* in state and county highways, except such highways as are maintained by the state by the patrol system, but the liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the state under this chapter."

Section 74, chapter 30 of the Laws of 1909, being the Highway Law, wherein the town was made liable for damages, created liability only where injury was caused by reason of defects in its highway and the state when it assumed liability by an enactment through the legislature assumed such liability only for defects in its highways under the patrol system, so that in each case in giving a right of action the legislature predicated the right to recover upon defects in the highway; and it must be assumed that when the state, through its legislature, assumed liability and used the word " defect " in the statute, that this language was to receive the same interpretation and construction as had been given to the word " defect " by judicial interpretation and construction of the act holding towns liable for defects of highways. The

state when it created a tribunal to hear, try and determine claims against it provided, '' in no case shall any liability be implied against the state, and no award shall be made on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity.'' Code Civ. Pro. § 264. The state in keeping its highways in repair, to make them safe for public travel, was obligated to place gravel upon the sides of macadam roads from time to time as they wore away from use by the public to prevent an abrupt shoulder being created or made; and we do not think it was negligence on the part of the state to follow the ordinary custom of placing loose gravel on the dirt part of the ordinary constructed state highway and to bring it up to the level of the macadam surfaced part of the road. *Sharot* v. *City of New York,* 177 App. Div. 869; affd., 226 N. Y. 679; *King* v. *Village of Fort Ann,* 180 id. 496; *Flansburg* v. *Town of Elbridge,* 205 id. 423.

There can also be no question that when two causes combine to produce injury to a traveler upon a highway both of which are in their nature proximate, the one being a palpable defect in the highway and the other some occurrence for which neither party is responsible, the defendant is liable provided the injury would not have been sustained but for such defect. *Ring* v. *City of Cohoes,* 77 N. Y. 83; *Sweet* v. *Perkins,* 196 id. 482; *Thompson* v. *Town of Bath,* 142 App. Div. 331.

But before this rule is applicable to this case it must be established that the state was guilty of negligence by permitting *defects* to exist in its highway. We have examined many authorities where, under the statute holding the towns liable for defects, towns were held liable for failure

to erect barriers, but in each of these cases the failure to erect a barrier and for which the town is held liable, the facts were much different than they are in this case. Usually there were circumstances which made the highway dangerous owing to the fact that there was a sharp curve, a narrow road, a steep hill, or many other circumstances which ordinarily justified a jury in finding that the commissioner of highways of the town was negligent in not placing a barrier at such locations. And while it is said the question of negligence and whether a barrier should be placed along the highway for the protection of the public is a question of fact for the jury, yet as was said in the case of *Lane* v. *Town of Hancock,* 142 N. Y. 510, by Judge O'Brien writing the opinion, on page 519: "The elements which enter into the question of negligence are generally of such a nature as to make it a question of fact. Even where the general facts are not in dispute, as here, but the inference to be drawn from them is not clear and certain, but doubtful, the case must be submitted to the jury. But in every case there is always a preliminary question for the court as to whether there is any evidence upon which a jury could properly find a verdict for the party producing it, and upon whom the burden of proof is imposed. If there is not the court must direct a non-suit or a verdict as the case may require."

This rule was followed in *Lane* v. *Town of Hancock,* 142 N. Y. 510; *Coney* v. *Town of Gilboa,* 55 App. Div. 111.

In the case on trial the roadway was twenty-two feet in width. It was perfectly straight for a long distance, was substantially level with the lands adjoining on one side and with an embankment of about twelve feet at the deepest point on the other side, and as the state can only be held liable where the same state of facts

would make a town liable for defects in its highway the same rule should be applied in each case. Under the circumstances if this action was against a town the town under the authorities would not be liable because the town or its commissioner could not reasonably be held to anticipate an emergency of the kind that occurred in this case.

There are many authorities in this state which hold where the conditions are similar to those in the case on trial and where an emergency occurred which caused an accident, that such condition was not a defect and it was further held that it was not negligence on the part of its commissioner to fail to erect barriers at such places.

It has recently been decided by the Appellate Division, third department, where the circumstances were the same as they are in this case where the plaintiff was driving an automobile truck upon an improved macadam highway, smooth and level for twenty feet in width, and the automobile locked wheels with a passing buggy, and in doing so the automobile turned at right angles to the road and went head over the embankment, that the commissioner of highways was not negligent in failing to erect barriers at a location of this kind. And it was further held that he was under no duty to anticipate such an emergency. *Dorrer* v. *Town of Callicoon,* 183 App. Div. 186.

Under the former rule where the commissioner was liable, and after the enactment of the statute making the town liable for defects in the highway, it has frequently been held that the town was not an insurer of the safety of persons traveling upon the highway, but was only required to use ordinary prudence and care; and the commissioner and town were held to the sensible rule which required them to exercise ordinary care, and at no time was the commissioner expected to anticipate some unusual and unforeseen

event and guard against it. It cannot be said that a commissioner of highways under this rule would have been expected to anticipate an emergency which occurred in this case. While, as a rule, it is a question of fact for a jury to determine whether the commissioner was negligent from all the facts and circumstances, in this case there were no disputed facts as to the location, distance and surrounding circumstances; and under numerous authorities where the roadway was of sufficient width and was a straight road and substantially level, it was held as a matter of law that it was not negligence to fail to erect barriers or guards where there was an embankment so near the road as to permit vehicles going over the bank where some sudden or unforeseen emergency occurs. *Lane* v. *Town of Hancock,* 142 N. Y. 510; *Waller* v. *Town of Hebron,* 5 App. Div. 577; 17 id. 158; 131 N. Y. 447; *Hubbell* v. *Yonkers,* 104 id. 434; *Monk* v. *Town of New Utrecht,* Id. 552; *Wade* v. *Town of Worcester,* 134 App. Div. 51.

We do not think that the fact that there was loose gravel on the dirt part of this road, placed there by the state, was anything which would call upon a commissioner if he had charge of the road to anticipate danger by reason thereof. It was a part of the duty of the state to make that portion of the road safe for travel and not allow it to wear down, and in doing this the state was not negligent in failing to anticipate the emergency that occurred at the time of the accident in this case. The authorities cited hold that the conditions as they existed at the time of the accident to the claimant were not a defect. The claim of the claimant should, therefore, be dismissed.

Ackerson, P. J., concurs.

Claim dismissed.