**Julius Menestrina, Administrator of the Estate of Theodore J. Menestrina, Deceased, Appellee, v. The St. Louis National Stock Yards, Appellant.**

Opinion filed January 4, 1935.

JOHN W. FREELS, of East St. Louis, for appellant; ROPIEQUET & FREELS, of East St. Louis, of counsel.

WHEELER, OEHMKE & DUNHAM and WILMER L. VOGT, all of East St. Louis, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Plaintiff, as administrator of the estate of Theodore J. Menestrina, deceased, brought suit against defendant in the city court of East St. Louis, where he obtained a judgment for $2,000, from which the latter appeals.

The declaration charged that defendant owned and operated a stock yards in St. Clair county, consisting of many stock pens, separated by wooden board fences and alleys; that plaintiff's intestate, a veterinarian, was an employee of the State of Illinois, in the course of which employment he was acting as an inspector of cattle at said stock yards, and that he was there by

consent and invitation of the defendant; that "his usual duties as a cattle inspector required him, with the consent, permission and invitation of the defendant, to enter said cattle pens and cross said fences for the purpose of inspecting the cattle therein"; that it was the duty of defendant to maintain such fences in a reasonably safe condition for use by plaintiff's intestate in carrying out his said duties; and that defendant permitted such fences to become in bad repair, in consequence of which, while plaintiff's intestate was crossing one of them, the boards gave way and broke, occasioning plaintiff's intestate an injury from which he later died.

To the declaration was pleaded the general issue, and a special plea, in substance, that plaintiff's intestate, being an employee of the State, plaintiff should have proceeded, under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.*, against the State, and that he had no cause of action against the defendant. A demurrer to the special plea was sustained, and the ruling is assigned as error.

Sec. 26, Art. 4, of the State constitution, provides, "The State of Illinois shall never be made defendant in any court of law or equity." Proceedings, under the Workmen's Compensation Act, before the industrial commission, while somewhat informal, in all their essentials partake of the nature of lawsuits, and are terminated by an order or judgment which fixes the rights of the parties as effectually as does a judgment at law or a decree in equity. We are of opinion that to have thus proceeded against the State, would to all intents have been to sue the commonwealth, a course which is barred by the constitution.

The subject, however, is fully provided for by the Court of Claims Act, pars. 462 to 475, ch. 37, Cahill's R. S. 1933. Par. 467, subpar. 4, relative to the powers of the court, provides that it shall have power to "hear

and determine all claims and demands, legal and equitable, liquidated and unliquidated, *ex contractu* and *ex delicto,* which the State, as a sovereign commonwealth, should, in equity and good conscience discharge and pay." Paragraph 6 of the same section confers upon the court the power "to hear and determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State, such determination to be made in accordance with the rules prescribed in the Act commonly called the 'Workmen's Compensation Act,' the Industrial Commission being hereby relieved of any duty relative thereto." Par. 474 declares that the jurisdiction conferred upon the court of claims is exclusive.

It is apparent that the legislature designed that such demands were only cognizable before, and by, the court of claims, and that the procedure therein should be, as near as might be, that employed under the Workmen's Compensation Act, which should not otherwise apply. That this is clear appears from the last clause of said par. 6: "The Industrial Commission being hereby relieved of any duty relative thereto." It is manifest that the demand could not have been heard by the industrial commission, and the court properly sustained the demurrer to the special plea.

The defendant insists that the proof does not establish a duty on its part, towards plaintiff's intestate, to keep the fences in repair for the safety of cattle inspectors climbing over or crossing them.

The proof shows that on June 3, 1932, decedent, while in discharge of his duties as a veterinary inspector, at the instance of the Liner Commission Company, entered one of the numerous pens of defendant for the purpose of inoculating a bull confined therein. The pen was 12 x 20 feet, with a door at its front running the entire width. Its sides were composed of fences made of 2 x 6 boards, placed 9 inches apart, the

topmost of which was about 6 feet high, and sur-
mounted by a cap-board which was laid flat upon the
upper edge of the top board.

Decedent entered the pen through the door and at-
tempted to drive the bull toward the gate, where
Mr. Liner stood, so that the latter, when the animal
thrust its head through the gate, which was open about
2 feet, might close it against the neck of the animal,
and thereby hold it in a sort of improvised stanchion,
the gate to be kept closed by means of a rope, until
decedent should have injected serum. The animal,
however, instead of heading for the gate, turned on
decedent, who, in order to escape, climbed the side
fence and threw his leg on the cap-board, whereupon
the next board below it came loose and gave way, the
cap-board, without its support, breaking in two, and
letting decedent down upon the one secondly below it;
after which he fell to the ground, on the outside of the
pen, alighting on his feet. It is claimed, as a result of
his fall, that he sustained injuries which later caused
or hastened his death.

As before stated, the declaration averred that dece-
dent's duties as a cattle inspector required him to
enter the pens and cross the fences for the purpose of
inspecting the cattle; and that defendant was under
the duty of keeping such fences in a reasonably safe
condition for use of decedent in carrying out his said
duties of employment.

It is thus seen that the duty of defendant to keep the
fences in repair, so far as decedent was concerned, is
predicated upon the fact that one of the duties of dece-
dent, as an inspector, required him to cross the fences;
and that, as he was an invitee of defendant, the latter
bore the obligation of maintaining the fences in safe
condition while he was discharging his duties as such.

The allegation that decedent's duties required him
to cross or climb the fences is thus laid as the basis of
defendant's duty to keep in safe repair such fences or

the top boards thereof. This is a material and essential allegation, and must be proved as charged, to entitle plaintiff to a recovery.

The record is devoid of any testimony which tends in any way to prove that decedent's duties required him to cross the fences of the pens. There has not been proven any rule that required him so to do, nor that there was any habit, practice or custom, on his part or that of any other inspector, to climb or cross the fences in order to enter or leave the pens in the discharge of their duties as livestock inspectors. The only proof that decedent ever entered any pen was the testimony of Liner as to what occurred on the day in question. Dr. Merryman, who was the superior of decedent, and under whose direction the latter worked, was called as a witness, but did not testify that any of the inspectors were required or expected, in the course of their employment, to climb the fences in order to enter or leave the pens. This necessary element of plaintiff's case, as made by his declaration, is wholly unproved.

Defendant does not dispute that decedent was an invitee of its concern, nor that the latter owed him the common law duty of keeping the premises in reasonably safe condition. It contends, however, that such obligation applies only to those contingencies which are reasonably to be expected; and that the occurrence in question was one which could not have been reasonably anticipated or foreseen, and that it was not a use of the fence against which defendant was required to provide.

The owner of premises is bound to use reasonable care in so maintaining his property, that those who come thereon by his invitation, whether express or implied, may do so in safety, and if he fails in such duty, and an invitee is injured as a consequence, without negligence or fault on his part, the owner will be

required to respond in damages. *Devaney v. Otis Elevator Co.,* 251 Ill. 28; *McDermott v. Burke,* 256 Ill. 401.

The rule, however, does not require that the owner foresee and guard against, or take precautionary measures to avert accidents or injuries, resultant from unusual and unexpected occurrences which could not have been reasonably anticipated, and would not have happened unless under exceptional and extraordinary circumstances. *LaVeer v. Hanke Iron & Wire Works,* 187 Ill. App. 481; *Atchison, T. & S. F. Ry. Co. v. Calhoun,* 213 U. S. 1; *Glasier v. Town of Hebron,* 131 N. Y. 447, 30 N. E. 239; *Weesen v. Missouri Pac. Ry. Co.,* 175 Mo. App. 374, 162 S. W. 304; *King v. Dawson* (Tex. Civ. App.), 192 S. W. 271; *Bonniwell v. Milwaukee Light, Heat & Traction Co.,* 174 Wis. 1, 182 N. W. 468; *Nelson v. Chicago, M. & St. P. Ry. Co.,* 30 Minn. 74, 14 N. W. 360; *Wabash, St. L. & P. Ry. Co. v. Locke,* 112 Ind. 404, 14 N. E. 391.

The accident in question was most peculiar and unusual, and one the ordinary mind, which can be guided only by a reasonable estimate of probabilities, would not have anticipated would occur. To hold the owner to have foreseen and guarded against an event so rare and unexpected, would be to practically hold it as an insurer against any accident which human caution or foresight could prevent,—a responsibility not exacted by the law. *Hubbell v. City of Yonkers,* 104 N. Y. 434, 10 N. E. 858.

We are of opinion that under the pleadings, and upon this record, plaintiff has proven no duty on the part of the defendant to keep the top boards of the fence in sufficient repair to insure the safety of those climbing over them, nor has he proven, of the decedent, that "his usual duties as a cattle inspector required him . . . to enter said cattle pens and cross said

fences for the purpose of inspecting the cattle therein," as alleged in the declaration.

For which reasons we think the trial court should have sustained defendant's motion for a directed verdict, made at the close of plaintiff's testimony. The judgment is reversed and, by virtue of the authority conferred upon this court by sec. 92 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 220, judgment is given for defendant, and against plaintiff for costs.

*Reversed, and judgment here.*