## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company et al. v. Scott.

[No. 3,923. Filed October 8, 1902.]

Master and Servant.—*Personal Injuries.*—*Employers Liability Act.*—
*Complaint.*—*Instructions.*—A complaint for personal injuries charged
that plaintiff was employed in repairing a telegraph line under
the direction of defendant's foreman; that many of the poles were
defective, and it was the duty of the foreman to examine the
poles and remove the defective ones, and replace them with new
poles; that while the foreman and a gang of men were replacing
the poles, plaintiff, under the direction of the foreman, was work-
ing ahead of the gang cutting gains in the poles lying on the
ground for the attachment of cross-arms; that after the poles
were placed for a certain distance, it was the duty of plaintiff, as
lineman, to go back and fasten wires on the poles that had been
tested or replaced; that the foreman selected an old pole from
which to stretch the wires, and directed plaintiff to climb the
pole to adjust a stay wire over the top of it; that when plaintiff
was at the top of the pole the foreman ordered the men to pull
on the wire, and the pole being rotten under the surface of the
ground, broke off at the ground, and injured plaintiff. *Held*,
that the complaint stated a cause of action under the second
clause of the employers liability act (§7083 Burns 1901), but not
under the first clause thereof, and an instruction authorizing a
recovery based upon a theory within the provisions of the first
clause was erroneous. *pp. 520–527.*

Same.—*Assumption of Risk.*—*Complaint.*—*Evidence.*—*Instruction.*—As-
sumption of risk is not included under the head of contributory
negligence, and the existence thereof must be specifically denied
in the complaint, and satisfactorily proved on the trial; and an in-
struction, in an action by a servant against the master for personal
injuries, which undertakes to define the basis on which plaintiff
may recover should not omit the essential factor of want of knowl-
edge of the danger on the part of the plaintiff. *pp. 530, 531.*

From Clinton Circuit Court; *J. V. Kent*, Judge.

Action by William M. Scott against the Cleveland,
Cincinnati, Chicago & St. Louis Railway Company and
the Western Union Telegraph Company for damages for
personal injuries sustained. From a judgment for plain-
tiff, defendants appeal. *Reversed.*

*J. T. Dye, L. J. Hackney, S. N. Chambers, S. O. Pickens, C. W. Moores* and *G. H. Fearons*, for appellants.

*B. Crane, A. B. Anderson* and *M. W. Bruner*, for appellee.

BLACK, J.—The appellee's complaint against the appellants, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and the Western Union Telegraph Company, filed in the Montgomery Circuit Court, contained two paragraphs. In the first, after introductory matter, it was shown in substance that a telegraph line was maintained, operated, and controlled along the line of the railroad of the railway company, in Montgomery county, in common and for the benefit of both of the appellants, and was used by the railway company in running its trains, and was necessary therefor, and the movement and running of the trains were controlled by means of the telegraph lines; that the telegraph line along the railroad in that county, during the year 1897, was out of and in need of repair; that many of the poles in the line were old, rotten, and defective, and new poles were required to be placed instead of them; that some of the poles had been put in a year or two before and were good and strong and fit to be left standing; that in October, 1897, the appellants were engaged in repairing the telegraph line by removing the old and defective poles and replacing them with new ones; that in the prosecution of this work the appellants employed the appellee, who is a lineman, to assist in this work; that other persons were employed in the work, and they and the appellee composed a gang of some sixteen men; that over these men the appellants placed one Lewis W. Roseman as foreman, under whose orders and directions the gang worked, and to whose orders and directions the appellee and said men were bound to conform and did conform in the prosecution of the work; that said foreman had full charge of the work and of the men en-

gaged therein; that new telegraph poles were scattered and distributed along the line of said road, and the appellee was directed by said foreman to go on ahead of the remainder of said men, and to cut the gains in said poles while lying distributed along the road and on the ground, which gains are necessary to hold the cross-arms near the tops of the poles, and appellee did perform this work as directed by the foreman; that while the appellee was engaged in this work, the foreman, who was in charge of the remainder of the gang, was engaged in removing the defective poles and in replacing them with new ones ready to put on the wires; that it was the duty and business of the foreman to test all of the old poles, and to ascertain by tests and examination whether they were sound enough and fit to remain and hold the wires, and, if they were not, he was to have them removed and good ones put in their places; that after this had been done for a mile or so along the road, it was then the duty of the appellee, acting under the orders of the foreman, to go back and fasten the wires onto the poles that had been tested, or that had replaced the defective poles; that the wires had to be tightly stretched before they were made fast to the cross-arms, and, in order to stretch them and fasten them when stretched, one of the poles was selected by the foreman from which to stretch the wires; that, as there was a great strain on this pole, it had to be stayed so as to stand the strain; that, in order to stay it, a heavy wire was placed over the top of it, and was extended to the foot of the pole standing west of it, and was made fast to this pole, and this wire was stretched tightly, so that the pole which it was intended to stay would not give, and would stand the stretching of the wires from the east; that the appellee did go back, under the orders of the foreman, to assist in stretching the wires and in staying the pole from which the stretching was to be done; that the telegraph wires were to be stretched from said pole and then fastened to the cross-arm at its top, to form the telegraph sys-

tem along the railway; that the foreman had selected an old pole from which to stretch the wires, and had not put a new one in its place as he might and ought to have done; that he directed the appellee to climb this pole, and to adjust over the top of it the wire that should so stay it; that the appellee did climb this pole as directed, and did adjust the staying wire over the top of it; that while he was at the top of the pole, with his left leg over the cross-arm at that point, which position was the proper, usual, and customary one, the foreman negligently ordered some men of the gang to pull on the wire, so as to stay it, which was the usual and proper mode to pursue, the appellee remaining at the top, as was the custom; that as soon as they pulled on the wire the pole broke off at the ground, and the appellee fell, with the pole, to the ground; that the pole was twenty-five feet high, and the appellee was right at the top of it before and at the time of its so falling; that by the fall he was greatly bruised and hurt, and the cross-bar and pole, falling upon his left leg, broke and crushed it at the knee joint; that such injury is a permanent one, and on account of it the appellee is a cripple for life; that the pole was about twelve inches in diameter at the ground and tapered gradually to the top, where it was about eight inches in diameter; that it was a wooden pole, commonly known as white cedar; that when appellee climbed it, it had the appearance of being sound and strong, but it was in reality rotten under the surface of the ground and entirely unsafe for the use to which it was put; that appellee did not know that it was unsound and rotten, but relied upon the examination that he supposed the foreman had given it, and upon its apparent soundness; that it was the duty of the foreman to examine and test said pole, as was understood at the time by the appellee, and the foreman was entrusted by the appellants with said duty; that he did not perform said duty, but negligently allowed said defective pole to remain there, and neglected

and failed to test and inspect it that he might thereby ascertain whether it was sufficiently strong to remain and to stand the strain of the wires and of the guy wire and the weight of the lineman; and, without having made any effort to discover the condition of the pole, and without having ascertained its true condition, he ordered the appellee to ascend it for the purposes aforesaid, and the appellee obeyed this order and ascended the pole without any knowledge or notice that the foreman had failed to test and inspect the pole for the purposes aforesaid, and without any notice or knowledge that the pole was rotten or unsafe, but believing it to be safe. It was further alleged that if the foreman had properly examined the pole he could have discovered its defective condition; that the pole looked on the outside like it was sound; that the appellee had no opportunity to examine it or to find out its defective and dangerous condition, and when he climbed it he did so under the order and direction of the foreman, believing that it was safe and sound. After other averments, which need not be set out for the purposes of our decision, it was alleged that the appellee's injury was caused by the fault and negligence of the appellants "as aforesaid," and without any fault or negligence whatever on the part of the appellee, etc.

The second paragraph was substantially the same as the first, except that, instead of alleging that the foreman did not perform his duty to examine and test the pole, but negligently allowed it to remain, and neglected and failed to test and inspect it, and without having made any effort to discover its condition, he ordered the appellee to ascend the pole, etc., as in the first paragraph, it was in the second alleged that the foreman by the use of ordinary care and attention, and by the use of the tools and the means then at hand and under his control and at his command, could have readily found out whether the pole was rotten, decayed, and defective, and not strong enough to stand and

remain standing, but he so negligently and carelessly performed and discharged his duty as aforesaid that he failed to ascertain and find out that it was rotten, decayed, unsound, and not fit to remain standing as aforesaid; that without making use of said tools and means at his command, or making any other suitable examination or test, the foreman negligently ordered the appellee to ascend the pole for the purposes aforesaid, etc.

The court at the request of the appellee gave to the jury the following instructions: "(1) If the jury finds from the evidence that the defendants are corporations, and that the plaintiff was in their employ, and that the injury to the plaintiff, if there was such injury, resulted from the negligence of a person in the service of the corporations, to whose order or direction the plaintiff at the time of the injury was bound to conform and did conform, then, in case you find he was injured as alleged, you should find for the plaintiff, if you also find that the plaintiff is free from negligence in respect to such injury. (2) If the jury finds from the evidence that these defendants are corporations, that the plaintiff was in their employ in repairing a telegraph line when he suffered the injury complained of, if he was so injured, and he was injured, as alleged, by reason of any defect in the condition of ways, works, plant, tools, and machinery connected with or in use in the business of such corporations, and such defect was the result of negligence on the part of such corporations, or of some person entrusted by them with the duty of keeping such way, works, plant, tools, or machinery in proper condition, then you should find for the plaintiff, if you also find that he was free from negligence."

As indicated by these instructions, and as asserted in argument here, the appellee's theory was and is that the complaint in both paragraphs was based upon our employers liability act of 1893, §7083 Burns 1901. That section, being the first section of the act, provides that every rail-

road or other corporation, except municipal, operating in
this State, shall be liable for damages for personal injury
suffered by any employe while in its service, the employe
so injured being in the exercise of due care and diligence,
in certain specified cases, the first two of which are as
follows: "(1) When such injury is suffered by reason of
any defect in the condition of the ways, works, plant, tools,
and machinery connected with or in use in the business
of such corporation, when such defect was the result of
negligence on the part of the corporation, or some person
entrusted by it with the duty of keeping such way, works,
plant, tools, or machinery in proper condition. (2) Where
such injury resulted from the negligence of any person in
the service of such corporation, to whose order or direction
the injured employe at the time of the injury was bound
to conform, and did conform."

The first clause of this statute is substantially a legisla-
tive declaration of common law as it existed in this State
at the time of the enactment in reference to the employer's
responsibility for injury to his employe under the circum-
stances stated in the statute. When the English statute,
from which ours and other similar statutes in this country
are derived, was enacted, the employe who was entrusted
by his employer with the duty of "seeing that the ways,
works, machinery, or plant were in proper condition," as
is the language of the English statute of 1880, and of the
Alabama statute of 1885; or with the duty of "seeing that
the ways, works, or machinery were in proper condition,"
as expressed in the Massachusetts statute of 1887; or with
the duty of "keeping such way, works, plant, tools, or ma-
chinery in proper condition," as enacted in our statute of
1893, was regarded in England as the fellow servant of the
employe injured through his negligence, and the employer
was not liable for the injury. The liability of the em-
ployer for his own personal negligence was not affected
by the English statute, but a new liability was created for

the negligence of servants so entrusted with duty. The state of the common law as declared and administered in this State was such that a statute was not required thus to define the employer's liability. An employe thus entrusted with duty was not, in this State, a fellow servant of the employe injured by his negligence in the performance of the duty. By our common law, the master can not divest himself of responsibility in such case by delegating his duty to an agent or servant. The statutory liability is, of course, limited to the instances expressed in the statute, but they are included in the common law liability, and no advantage can be gained in a case such as that before us by framing a complaint that would conform with the first clause of the statute, which would not be attainable by framing the complaint as in a common law action brought before the enactment of the statute. The action under the first clause of the statute is subject to the same requirements concerning contributory negligence and assumption of risks as is a common law action. *Whitcomb* v. *Standard Oil Co.,* 153 Ind. 513.

The second clause of the statute, however, introduced a new cause of action in favor of the employe by taking away from the employer the defense of fellow servant, and gave the right of recovery when the injury results from the negligence of any person in the service of the corporation to whose order or direction the injured employe at the time of the injury was bound to conform and did conform. In the corresponding provision of the English statute of 1880 are the additional words, "when such injury resulted from his having so conformed," and additional language to the same effect is contained in the Alabama statute. To bring a case within the second clause of the statute it is not necessary, under our decisions, that there be negligence in the giving of the order or direction contemplated by the statute, or that the injury should have resulted directly merely from having conformed to the order or direction. We have

cases in which the negligence held to be within the meaning of the statute was negligence of the superior ' employe which occurred after the giving of a proper order without negligence, to which the injured employe was conforming when injured. *Louisville, etc., R. Co.* v. *Wagner,* 153 Ind. 420; *Indianapolis Gas Co.* v. *Shumack,* 23 Ind. App. 87; *Thacker* v. *Chicago, etc., R. Co.,* 159 Ind. 82.

In the first paragraph of the appellee's complaint it is alleged that the foreman ordered him to ascend the pole, this action of the foreman not being expressly characterized as negligent. The second paragraph contained a like averment, and a subsequent allegation that the foreman negligently ordered him to ascend. This difference is not material. The order to ascend the pole was not the proximate cause of the injury. In both paragraphs it is alleged that the foreman negligently ordered some men to pull on the guy rope, and in the first paragraph negligence is attributed to the foreman in failing to inspect the pole, while in the second paragraph he is shown to have inspected it insufficiently through negligence. The proximate cause of the injury was the falling of the pole, through the negligence of the foreman in giving the order to pull on the guy wire, and in failing to examine properly the pole and replace it with one sufficient to stand the strain of such pulling. There was no substantial difference between the paragraphs except as to the characterization of the foreman's negligence concerning inspection. We think each paragraph sufficiently stated a cause of action under the second clause of the statute.

The appellee presented by the two instructions under discussion, to each of which the appellants excepted, the theory that the case involved also a cause of action under the first clause of the statute. If this view be correct, each paragraph contained two separate causes of action, and was subject to the objection of duplicity. The parties having gone to trial without any presentation of such objection,

the plaintiff would be entitled to a single recovery of damages if on the trial he established either cause of action that could be said to be sufficiently stated in the complaint.

In construing the complaint with reference to the question whether or not it states facts constituting a cause of action under the first clause of the statute, its averments should be taken most strongly against the pleader, and the averments which would contribute to the statement of a cause of action under either the first or second clause should be regarded as only applicable to the second clause, if there be wanting any averment material to the statement of a cause of action under the first clause. It does appear from the complaint that there was a defect in the condition of the pole for the use to which it was subjected for the purpose of staying it. This was pertinent to a showing of negligence of the foreman. In establishing a cause of action under the second clause it would be proper that it should appear in evidence that the pole yielded to the strain, and fell and injured the appellee because of the defect in its condition. Such evidence would also be necessary to make out a case under the first clause; but the complaint did not contain any direct allegation that the injury was suffered, or that the pole fell, because of any alleged defect in the condition of the pole. It was alleged that the foreman negligently ordered some men to pull upon the guy wire. It was not directly stated that they pulled in obedience to this order, but it was alleged that as soon as they pulled on the wire the pole broke off and the appellee fell with the pole to the ground, and that by the fall he was injured. It was alleged near the close of each paragraph that the appellee's injury was caused by the fault and negligence of the defendants "as aforesaid." The only negligence thereinbefore alleged was negligence of the foreman, and the concluding averment did not enlarge the preceding allegations of negligence, but attributed the previously alleged negligence to the appellants, as might not improperly

be done; the appellants being responsible, under the second clause of the statute, for negligence' of the foreman as alleged. *Indianapolis Union R. Co.* v. *Houlihan,* 157 Ind. 494, 54 L. R. A. 787.

The complaint alleged that the foreman was entrusted by the appellants with the duty of examining and testing the poles and ascertaining their fitness, and that he had full charge of the work and of the men; but in a case under the second clause of the statute the person to whose order or direction the injured employe conformed may be any person in the service of the corporation to whose order the injured employe at the time of the injury was bound to conform and did conform. He may be a fellow servant with such superiority, or he may be a vice principal; so that the averment that the foreman was so entrusted by the appellants was not necessarily inconsistent in the statement of a cause of action under the second clause. Without any allegation purporting that the injury was suffered by' reason of any alleged defect in the pole in question, the averments which show that there was a defect may be taken as showing the circumstances or conditions under which the foreman, who gave the order to the appellee, was negligent, and how he was negligent. Whatever averments appropriate to the statement of a cause of action at common law or under the first clause of the statute may be found in the narration of the ground of action, they are not of themselves sufficient, without some additional direct averment as above indicated, to bring the complaint within such a theory of the case.

There was, then, no issue to which the second instruction given at the request of the appellee was applicable. But if the assumption that two separate causes of action were set forth in the complaint, which the request for these two instructions implied, were correct, the instructions were faulty, because, by following the general language of

the statute, they were not duly limited to the facts of the particular case. It can scarcely be said that it was proper to indicate, as in the first instruction, that the appellants would be liable if the injury resulted from the negligence of any person in their service to whose order the appellee was bound to conform, etc., without any reference to the particular person—the foreman—mentioned in the complaint.

Probably a telegraph pole in such a case may properly be regarded as coming within the meaning of the word "plant" in the first clause of the statute, but it can not be regarded as within the meaning of all the other names of things referred to in the same connection in the statute, and in the second instruction. If learned lawyers may be in doubt concerning the proper application of those terms, the jury ought not to be so subjected to confusion; and the person referred to as having been entrusted with the duty of keeping the thing in proper condition should not be referred to in the general language of the statute as "some person," but the reference should be applicable to the facts of the case. It may be true, that the jury, having the facts before them in evidence, were probably not misled by the general character of the instructions, and we might not be disposed to regard such inaccuracy as reversible error.

As already indicated, a cause of action under the first clause of the statute is not substantially different from a common law action for an injury under like circumstances. The burden of proof is upon the plaintiff in such case to show that he had not assumed the risk of the danger. *Clark County Cement Co.* v. *Wright,* 16 Ind. App. 630; *Chicago, etc., R. Co.* v. *Wagner,* 17 Ind. App. 22.

Assumption of the risk is an independent element or factor, not included under the head of contributory negligence, and the existence thereof must be specifically denied in the complaint, and satisfactorily proved on the trial.

*Pennsylvania Co.* v. *Witte,* 15 Ind. App. 583; *Chicago, etc., R. Co.* v. *Wagner, supra.* An instruction which undertakes to define the basis on which the plaintiff may recover should not omit the essential factor of want of knowledge of the danger on the part of the plaintiff. See *Kentucky, etc., Co.* v. *Eastman,* 7 Ind. App. 514; *Pennsylvania Co.* v. *Witte, supra.*

This action was commenced before the enactment of §359a Burns 1901, making contributory negligence in certain cases matter of defense; though that section does not abolish or modify the rule that in an ordinary action against an employer to recover for the personal injury of an employe through negligence of the employer the plaintiff must negative knowledge on the part of the employe of the danger. *Bowles* v. *Indiana R. Co.,* 27 Ind. App. 672. If it may be said that the subject of assumption of the risk of danger was covered by other instructions given by the court, yet the second instruction given at the request of the appellee purported to set forth all the necessary ingredients of a separate cause of action, and the non-existence of knowledge on the part of the plaintiff constituted as essential an ingredient as his freedom from negligence, and the omission thereof in this instruction was calculated, at least, to confuse the jury. However this may be, the instruction under a legitimate construction of the complaint, was not adapted to the issue on trial, and we think the giving of this instruction was material error.

Judgment reversed.