# VALPARAISO LIGHTING COMPANY *v.* LETHERMAN, ADMINISTRATOR.

[No. 6,777. Filed June 30, 1910.]

1. MASTER AND SERVANT.—*Negligence.*—*Unsafe Bridge in Engine Room.*—*Foremen.*—*Fellow Servants.*—*Complaint.*—A complaint alleging that defendant gas company's foreman in charge of the whole gas works ordered the plaintiff's decedent to leave his work of firing the furnace and to go upon an overhead bridge in the engine room and assist in raising a metal tank, that decedent obeyed, that the railing to such bridge was negligently permitted to become rusty and unsafe, and that because thereof the railing broke causing decedent to fall and sustain fatal injuries, states a common-law, but not a statutory liability. p. 304.

2. MASTER AND SERVANT.— *Negligence.*— *Foreman.*— *Fellow Servants.*— *Evidence.*— Evidence showing that the manager of de-

fendant's gas plant ordered a foreman to put a metal tank in a certain position but not specifying the method of doing it, that such foreman called decedent, who was a fireman, to assist, that the foreman ordered decedent to go upon an overhead bridge and to help elevate the tank, that the railing of the bridge was rusty and weak and that it broke, causing decedent's death, shows that such foreman was a fellow servant with decedent in the work, and therefore, that the company is not liable. Hadley and Roby, JJ., dissent. p. 307.

3. MASTER AND SERVANT.—*Improper Use of Appliances.*—A master is not liable for injuries sustained by servants in the improper use of appliances suitable for their intended purposes. p. 309.

4. MASTER AND SERVANT.—*Injury to Servant.*—*Master's Duty.*—A master is bound to provide against what is likely to happen in the use of appliances provided for his servants, but not against what is remotely or slightly probable. p. 309.

From Lake Circuit Court; *W. C. McMahan,* Judge.

Action by Andrew P. Letherman, as administrator of the estate of Daniel F. Horner, deceased, against the Valparaiso Lighting Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Reversed.*

*Elmer E. Stevenson* and *L. L. Bomberger,* for appellant.
*N. L. Agnew, C. B. Tinkham* and *D. E. Kelly,* for appellee.

MYERS, J.—Appellee, as administrator of the estate of Daniel F. Horner, deceased, recovered a judgment for damages against appellant, for the death of said Horner, caused by the alleged negligence of appellant.

There were two paragraphs of complaint, a demurrer to each of which, for want of sufficient facts, was overruled. The court also overruled appellant's motion for a new trial.

After showing the representative character of appellee, and that appellant is a corporation owning, operating and conducting a gas-plant, with the necessary buildings, tanks, retorts and appliances for manufacturing gas and supplying it to the citizens of the city of Valparaiso, Indiana, the first paragraph alleged, in substance, that decedent, on June 25, 1906, was in the employ of appellant

as fireman in and about the furnaces of the gas-plant; that it was his duty to supply the furnaces with coal, and to make and keep fires; that Howard Shinnebarger was appellant's foreman in and about its plant and works, and as such had charge of the whole plant and of the laborers and the work in and about the plant, including decedent and the work done by him; that all the laborers, including decedent, were bound to conform, and did conform, to the orders and directions given by said foreman, and not otherwise, and decedent received his orders and directions about his work and conduct solely from said foreman; that on the day mentioned, and for ten years prior thereto, appellant had maintained a bridge along and in front of its retorts and standpipes, which bridge was about fifteen feet above the brick floor, and consisted of a runway made of iron floor plates and an iron railing upon the opposite side of the retorts and standpipes; that this railing, or guard, extended thirty-six inches above the floor of the bridge, and its purpose was to prevent persons standing or walking on the bridge from falling to the floor below; that, for more than a year prior to said date, appellant had negligently allowed this rail and guard to become rotten, rusty, corroded, weak and useless, as appellant well knew at and prior to the time of the accident; that the condition of the railing was unknown to decedent; that on said day the foreman desired to lift a heavy iron tank from the floor to the bridge, and for that purpose ordered the workmen to climb upon the bridge, and by means of ropes and pulleys raise the tank from the floor to the bridge, and for that purpose ordered and directed decedent to leave his work at the furnace, go to the bridge, and assist in raising the tank; that in all matters about the plant and works decedent was bound to conform to and obey the orders and directions of the foreman, who had full authority from appellant to act for it in that behalf; that, when so ordered by the foreman, decedent left his work of firing the furnace and climbed upon the

bridge, and stood thereon between the railing and the retort to which the bridge was attached; that decedent and others, under the charge, order and direction of the foreman, undertook to raise the tank to the bridge, which, on account of such weak, useless, rotten, rusty and corroded condition, and not otherwise, broke and gave way, and precipitated decedent and the laborers whom he was assisting, together with the iron tank, to the floor beneath; that decedent while in the exercise of due care in proceeding to obey and in obeying said order as aforesaid was injured, from which injuries he died; that said negligence of appellant in so allowing the bridge to become rusty, corroded, weak and rotten, and useless for the purpose for which it was used and intended to be used, and in so ordering decedent to go upon the bridge while it was in such condition, was the immediate and proximate cause of the sickness and death of decedent.

The second paragraph was like the first, except that it described the negligence of the foreman in what he did, and alleged his knowledge of the defective condition of the railing, and that decedent's fall and injury were caused by the alleged negligence of appellant and of the foreman.

It is claimed, on behalf of appellant, that the second paragraph was based on the second clause of the first section of the employers' liability act (Acts 1893 p. 293, §8017 Burns 1908), which was held invalid as applied to such corporations as appellant. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 14 L. R. A. (N. S.) 418. The person whose order the decedent obeyed is not by the pleading shown to be a vice-principal. He is represented as acting in the capacity of a foreman, which is compatible with being a fellow servant of the decedent. So far as the averment in either paragraph, that decedent was bound to obey and did obey the foreman, is concerned, it can have no greater significance than to aid in showing that the decedent was acting in the line of his duty under his employment. But in each paragraph the injury

and death are shown to have been caused by the negligent failure to keep in sufficient repair the place where and appliance with which decedent was performing his service; and we are of the opinion that each paragraph showed a common-law liability.

It was assigned in the motion for a new trial that the verdict was not sustained by sufficient evidence, and was contrary to law.

From the undisputed evidence, it appears that one Hayden had charge of appellant's plant as manager, and hired and discharged the men who worked there. The whole 2. business of the company was in his charge. Shinnebarger was employed as a foreman of the gas making, in which business he was an expert, and he did general duties around the plant, looking after the work, making necessary repairs and such improvements as Hayden laid out for him, and such as said foreman could do, helping the men at the retorts and performing any work that came up. Hayden gave the foreman orders as to what he was to do about the plant. If improvements were made, they were laid out for him by the manager or the chief engineer. At all times his duty was to do manual labor with the other men in the plant. Hayden gave the order to put the tank in question upon the brackets, without any specific order as to how it should be done, and was not present when this work was done. When the tank was raised, the foreman was present helping do the work. By his direction, Schroeder, an employe who did general work about the plant, got a rope which he and the foreman put on the tank, and then went upon the bridge, which was made of iron stringers with iron plates to walk on, and a gas-pipe railing on the outside. The bridge was about two feet wide and twenty feet long. One end of the railing was fastened into the wall, the other was supported by a gas-pipe, and the center supported by a riser. Schroeder pulled the tank up so that it cleared the floor. He then found it too heavy, and Shinnebarger called decedent to help him.

Schroeder and decedent pulled on the rope, and were assisted by Shinnebarger, standing on the floor beneath the bridge, until the tank was above his reach, when he, too, went upon the bridge. When one end of the tank was resting on the top of the railing and the other was hanging down, and the three men were trying to pull it over the railing, the railing broke, and the men and the tank fell to the floor below. The purpose of the railing was to guide men when walking back and forth on the bridge and to keep them from stepping off. The tank was an iron water trough. No tank had ever been placed on the railing before. The railing was not used to sit upon, though witnesses testified to having done so at different times.

There was evidence that the railing was rusty, and when at a previous time the foreman leaned against it, it swayed out. It was smeared with grease and tar. The tank was eight feet long, two feet deep, and two feet wide. There was testimony that it weighed 250 pounds, and also testimony that it weighed from 125 to 150 pounds.

There were other methods by which the employes could have hoisted the tank and put it in the desired place without dragging it over the railing of the bridge. When the manager gave the order to place the tank at a certain point, it was outside the building, and could have been moved to the desired place by passing it over a nearly level-top, low, coal shed, and through a window. There were two sets of blocks and tackles by which it might have been hoisted without touching the railing. These methods were available to the employes.

Under the facts shown by the evidence, Shinnebarger must be regarded as acting in the capacity of a fellow servant of the employes with whom he was working in the hoisting of the tank. It cannot be said that the railing which broke was being put to a use to which it was adapted, or for which it was constructed. It broke down in a use more dangerous

than that for which it could have been regarded as intended. It has a certain obvious use and purpose, and appellant in supplying and maintaining it would not reasonably anticipate such an additional use as that to which it was necessarily subjected when it broke down. What was done by Shinnebarger was not done by him as a representative of appellant in the discharge of a duty which appellant, as master, owed to decedent, but was done in the performance of a service as a coëmploye of decedent. They were both performing together a duty which they owed as fellow servants to their common employer. *Ross* v. *Union Cement, etc., Co.* (1900), 25 Ind. App. 463; *Smallwood* v. *Bedford Quarries Co.* (1902), 28 Ind. App. 692; *Peirce* v. *Oliver* (1897), 18 Ind. App. 87; *Brazil, etc., Coal Co.* v. *Cain* (1884), 98 Ind. 282; *Kerner* v. *Baltimore, etc., R. Co.* (1897), 149 Ind. 21; *Cleveland, etc., R. Co.* v. *Scott* (1902), 29 Ind. App. 519; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460.

The complaint attributed the injury and death of appellee's decedent to a defective condition of a bridge railing constructed for a specific use. There could be no recovery if the evidence showed that the railing, instead of being used for the purpose for which it was made and maintained, was being subjected unnecessarily to a different and more dangerous use by decedent and his fellow servants, without direction from appellant or a vice-principal to make such use of the appliance. *Kerner* v. *Baltimore, etc., R. Co., supra; Drinkout* v. *Eagle Machine Works* (1883), 90 Ind. 423; *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680.

The master is only bound to anticipate and provide against what usually happens and is likely to happen in the use of the appliances provided for his servants in their employment, but not against what is remotely and slightly probable. *Stone* v. *Boston, etc., R. Co.* (1898),

171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; P. H. & F. M. Roots Co. v. Meeker (1905), 165 Ind. 132; Standard Pottery Co. v. Moudy (1905), 35 Ind. App. 427.

The proper use of machinery and appliances is a duty which all employes owe to their employer.

Judgment reversed, and cause remanded for a new trial.

Comstock, C. J., Watson, P. J., and Rabb, J., concur.


## DISSENTING OPINION.

HADLEY, J.—In my opinion, under the facts shown, Shinnebarger was a vice-principal, doing the work of the master, when he directed how the tank should be placed, and ordered decedent to leave his usual occupation as fireman and go upon the bridge to assist in placing the tank. If this is true, the use of the bridge for that purpose could hardly be said to be an unforeseen use, since such use was at the direction of the master. That which is ordered to be done by the master must be considered to have been foreseen by him. It is not denied that the rusted and defective railing was the proximate cause of the injury. Had appellant discharged its duty, and furnished a railing reasonably fit for the purpose for which it was designed, the employe would not have lost his life. The fact that a weight, not in excess of an additional man, was being moved, at the time the decedent lost his life, by reason of a defective instrumentality furnished for his protection, does not authorize this court to ignore the finding of the jury and the judgment of the trial court. The opinion does not accord to the action of the jury and trial court those presumptions to which they are by law entitled.

Roby, J., concurs.