KING et al. v. DAWSON. (No. 5773.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 17, 1917. Rehearing Denied Feb. 21, 1917.)

1. MASTER AND SERVANT ⚬⚬107(2)—INJURIES TO SERVANT—LIABILITY.

Where a servant passed through a hole in a floor, and, to reach the hammer he was seeking, braced himself against an unblocked rolling door, when he could have held about a post, with his foot on a cleat, and so reached the hammer without touching the door, and the door moved so that he fell and was injured, his employer was not liable, since the mere fact that an appliance, as the door, happens to be placed where it can be used for the performance of work does not warrant the inference that the master meant that the servant should use it as he did, or the inference that the master was in fault in not knowing that the servant was likely to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 200, 254.]

2. MASTER AND SERVANT ⚬⚬128—INJURIES TO SERVANT—LIABILITY.

If the door had fallen on the servant while being put to its normal use of being opened or shut, or had fallen of its own weight and injured the servant, the latter would have had a cause of action against his employer, but not

when it fell from a use for which it was not intended.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 256.]

3. NEGLIGENCE ☞25 — LIABILITY — PRECAUTIONS AGAINST INJURY.

It is not negligence to fail to provide for an accident which could not have been foreseen.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 35–38.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Ed Dawson against Mrs. H. M. King and others. From a judgment for plaintiff, defendants appeal. Judgment reversed, and judgment rendered that plaintiff take nothing by his suit.

James B. Wells and J. K. Wells, both of Brownsville, H. R. Sutherland, of Corpus Christi, Harbert Davenport, of Brownsville, and G. R. Scott, Boone & Pope, of Corpus Christi, for appellants. J. C. Scott, of Corpus Christi, Geo. P. Brown, of Laredo, and E. B. Ward, of Corpus Christi, for appellee.

FLY, C. J. This is the third appeal in this case. 121 S. W. 917, and 171 S. W. 257. The case is fully stated in the two opinions on the former appeals. The two reversals took place because the trial judge failed and refused to submit questions of fact to the jury. The trial from which this appeal arises resulted in a verdict and judgment for appellee in the sum of $7,500. The cause was submitted on special issues.

[1] The facts on the last appeal of this case indicated to this court, and it was so found, that in going upstairs through the hole that had been cut for a staircase "it was absolutely necessary to take hold of the door." This court also found that "the failure to furnish stair steps made it absolutely necessary for appellee to pull himself up through the hole by laying hold of objects on either side of the hole." We also found that appellee "was compelled to grasp the door on one side and the post on the other," in ascending to the upper floor. The facts on this appeal present a different case from that on the former appeals. The testimony of appellee shows that there was a post at or near the opening left for the staircase; that cleats or wooden cross pieces had been nailed to the post, forming handholds and steps to be used in ascending to the upper floor. On the occasion that he was hurt appellee ascended the post by means of the cleats thereon for the purpose of getting a hammer on the upper floor. He had reached a point where the hammer could be reached. He was standing with his left foot on a cleat and his right suspended in the air, his left arm being clasped about the post from the front, and not from the rear, as would seem to be the most natural and effective way. While in this position he reached over and placed his right hand on the rolling door which was on one

side of the stairway on the upper floor, at the same time releasing his hold of the post with his left hand. He intended to pick up the hammer with the left hand. When he pressed the door with his right hand it rolled off at one end and swung down, causing appellee to fall.

Appellee admits that he could have put his left arm around the post with his left foot on the cleat, and could have reached the hammer with his right hand without touching the door, or he could have stepped from the post to the floor and have safely secured the hammer with either hand. Appellee testified:

"If I had thought that the door was going to fall, I would have put my right foot on that cleat and put my left arm around the south side of that 6x6 and pulled myself against the post, and have reached over with my right hand and have gotten the hammer."

Instead, he chose to stand on the cleat with his left foot, his right foot suspended in the air, and lean over and press against the rolling door, and try to get the hammer with his left hand. His position was awkward and insecure, and he admitted that if the door had been securely blocked and had moved any "reasonable distance," as it probably would have done if he had pressed as he did against it, he would have fallen. There was absolutely no necessity for using the door to ascend to the second floor, and it was not used for that purpose by appellee. Nor was there any necessity for appellee to use the door as a brace while he was reaching for the hammer. There was a platform on the first floor from which appellee and the Mexicans assisting him would step on the first cleat to ascend to the upper floor. Appellee had been up the post a number of times, but did not use the door to ascend. There was no necessity for so doing.

The question of a safe place in which to work is not raised by the evidence. The place was perfectly safe for the prosecution of the work in which appellee was engaged, and, had appellee not attempted to use the door in a way it was never intended it should be used, it would never have fallen, or if he had used the means and instruments supplied for reaching the second floor, he would not have been injured. No one would have anticipated that appellee would climb the post and press upon the rolling door, which he in the discharge of his duties was not called upon to touch, and use sufficient force to throw the door off its support. "The mere fact that an appliance happens to be placed where it can be used for the performance of the work which the injured servant undertook to do with it does not warrant the inference that the master meant that he should use it as he did, or the inference that he was in fault in not knowing that he was likely to do so." Labatt, Master and Servant, § 921.

The master's obligations to the servant are limited by the uses to which the instrumen-

talities were intended to be put by the servant. In a Mississippi case (Bell v. Oilmill Co., 77 Miss. 387, 27 South. 382), an employé hauling buckets of tar up on a roof lost his balance, and, in falling, grasped a triangular wooden "horse" used as an appliance in hauling up buckets. It broke and fell, and it was held that the defendant was not liable because it did not appear that the instrumentality was insufficient for the purpose for which it was intended. To the same effect are numerous authorities. Jayne v. Sebewaing Coal Co., 108 Mich. 242, 65 N. W. 971; Telephone Company v. Speicher, 59 N. J. Law, 23, 39 Atl. 661; Lighting Company v. Letherman, 46 Ind. App. 303, 92 N. E. 346; McPherson v. Bridge Co., 20 Or. 486, 26 Pac. 560; Morrison v. Burgess Sulphite-Fibre Co., 70 N. H. 406, 47 Atl. 412, 85 Am. St. Rep. 634.

In the last case cited, the facts, briefly stated, were that Morrison was a workman who had access to every part of defendant's building, and his work took him to every part of the mill. There was an elevator whose top was open, but covered with a canvass. While at work the plaintiff stepped on the canvass and was precipitated into buckets in the elevator used for conveying material to different floors. Plaintiff thought the elevator was covered with boards; but it was not necessary, but convenient, for him to step on the top of the elevator. The owner did not intend the elevator to be used as it was by plaintiff. The court said:

"If this elevator was a tool or appliance, the defendants owed the plaintiff no duty respecting it at the time of the accident, for he was then putting it to a use for which he knew it was not intended; and, although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended. * * * The case does not show that the defendants either intended for the plaintiff to use this elevator as he did, or knew, or were in fault for not knowing, that he was likely to do so."

The facts in that case were much stronger in favor of the plaintiff than in this, and we are not called upon to approve it as applied to its facts, but it is pertinent and applicable to the facts of this case.

The liability of the master does not attach under the circumstances of this and like cases, because an instrumentality or appliance is put to a use not contemplated or anticipated by him, and because the accident results from contributory negligence on the part of the servant. As said in Felch v. Allen, 98 Mass. 572:

"If the servants undertake to use machinery or instruments for purposes for which they were not designed, and for which the employer had no reason to suppose they would be used, it is their own fault or folly if harm comes from it."

[2] The facts in this case do not tend to show that the employers of appellee could have possibly anticipated that appellee would use the rolling door as a brace for his body

192 S.W.—18

while he reached for a hammer or for any other purpose. If the door had fallen while being opened or shut, or if it had fallen of its own weight and had injured appellee, he would have had a cause of action. Or if it had been shown that appellants had not furnished a staircase, and that it was necessary to use the door in ascending to the second floor, appellee might claim damages. But this was not done, and it appears that appellee and his employés had been ascending to the upper floor without touching the door, and when he was hurt he was not using the door to reach the upper floor, but was using it as a convenience, or, perhaps, because another way to reach the hammer, while safer, would have caused a little more exertion. The failure to have a staircase and failure to block the door were not the proximate cause of the injury to appellee, but the injuries arose from appellee using the door for purposes for which it was not intended it should be used, and for which it had not been customarily used. As was said by this court, through Associate Justice Neill, in Railway v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661:

"While it is the duty of the master to exercise ordinary care to furnish his servant a reasonably safe place to work, the obligation is generally restricted to the purpose for which it was designed. The master is not ordinarily required to answer for an injury to his servant, where the emergency which tested the fitness of the place arose from a use for which it was not designed, and which he could not reasonably anticipate. Hence the rule that an employer is not liable where the servant's injury was not caused by any defect in the place which affected its safety, when used in the ordinary way and for the purpose for which it was intended."

In that case the judgment of the lower court was reversed and judgment rendered for appellant, and a writ of error was refused by the Supreme Court. See, also, Railway v. Scott, 64 Tex. 549.

[3] The employer cannot be charged with negligence because, in the light of past events, if certain things had been done, the accident would not have occurred. It is not negligence to fail to provide against an accident that could not have been foreseen. After most accidents it can be seen how it could have been prevented, but that does not tend to prove that the accident should have been anticipated by the exercise of ordinary care and provision made against it. It is what should have been known or anticipated before, and not what every one knows after an accident, that fixes the liability of the master. Maue v. Railway, 198 N. Y. 221, 91 N. E. 621; Meyers v. Ideal Steam Laundry, 60 Wash. 134, 110 Pac. 803. It would be the greatest injustice to charge appellants in this case with knowledge of a possible emergency which would necessitate the use of an unblocked rolling door by a servant to prevent his fall from a post upon

which he had ascended to an upper floor. As said in the New York case last cited:

"The defendant's duty and liability are to be measured, not in the light of plaintiff's sad mishap, but by the conditions which antedated it."

Our view of the testimony renders it unnecessary to consider the numerous assignments of error of the two appellants.

The judgment of the trial court is reversed, and judgment here rendered that appellee take nothing by his suit and appellants recover all costs in this behalf expended.